# United States Court of Appeals
## For the First Circuit

---

No. 00-1672

DAVRIC MAINE CORPORATION, AND JOSEPH RICCI

Plaintiffs, Appellants,

v.

UNITED STATES POSTAL SERVICE, AND JOSEPH LEONTI

Defendants, Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. Chief District Judge]

---

Before

Torruella, Chief Judge,
Bownes, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Edward S. MacColl, with whom Thompson, Bull, Furey, Bass & MacColl, L.L.C., John S. Campbell, and Campbell & McArdle, P.A., were on brief, for appellant.

Hasley B. Frank, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, was on brief, for appellee.

---

January 26, 2001

---

**LYNCH, Circuit Judge**.  In the course of deciding on a site for a new postal facility, Joseph Leonti, the plant manager of the Portland, Maine, United States Postal Service center, made ill-considered statements about one of the sites that had been under consideration.  The owner of the site, the Davric Maine Corporation, felt that it and the site had been defamed.  Davric and the man who owns it, Joseph Ricci, filed suit in federal court against both the Postal Service and Leonti for defamation and tortious interference under state law, and in addition claimed that a constitutional tort had been committed.

The district court dismissed the claims against the Postal Service on the ground that the Postal Service enjoys sovereign immunity from suit absent a waiver, and that its immunity had not been waived as to defamation or tortious interference claims.  The court also dismissed the state law tort claims against the official on the ground that the official had been acting within the scope of his employment, and dismissed the constitutional tort claim for failure to state a claim.  Plaintiffs appeal.  This case presents an interesting question of first impression about the relation and interaction between the Postal Reorganization Act, 39 U.S.C. § 101 et seq., and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.  We affirm the district court's dismissal based on the conclusion that these Acts,

taken together, do not waive the Postal Service's immunity for state defamation or tortious interference claims. We also affirm the dismissal of the claims against Leonti.

## I.

For the purposes of a motion to dismiss, we accept as true the facts alleged in the complaint. See Day v. Massachusetts Air Nat'l Guard, 167 F.3d 678, 680 (1st Cir. 1999); Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1, 3 (1st Cir. 1998). The Postal Service in Maine entered into a search for a new location for its processing and distribution center. One site under consideration was a parcel in Scarborough Downs owned by Davric. The Postal Service entered into initial negotiations to purchase the site, but soon focused on a different site, one on Rand Road, as its preferred site. Joseph Ricci, the indirect owner of Davric, and Tony Armstrong, Davric's real estate broker, became outspoken critics of the Rand Road site, charging that the site was environmentally sensitive and alleging other mischief behind the Postal Service's preference for the Rand Road site. The Postal Service eventually rejected the Rand Road site.

After rejecting that site, the Postal Service again reviewed several possible sites, including the Davric site, and ultimately announced a plan to move the center to Lewiston,[1] rather than settling

---

[1] The Postal Service thereafter disclaimed any firm intention to move to the Lewiston/Auburn area and reopened

-3-

on the Davric site.  Plaintiffs maintain that the  Davric site was preferable and that this rejection of the site was in retaliation for their outspoken opposition to the Rand Road site.

It is in the course of defending this decision that the alleged defamation took place.  In a series of meetings with Postal Service employees to explain the site selection process, Joseph Leonti, the plant manger of the current distribution center, said that the Davric site was environmentally contaminated and that its development posed serious wetlands problems.  In one instance, Leonti allegedly linked Ricci and Davric to organized crime, claiming that there were dead horses and bodies buried on the site, and "maybe even Jimmy Hoffa could be buried there."  Plaintiffs say that all of these descriptions are untrue.  These meetings also included presentation materials prepared in part by the Postal Service, allegedly defamatory as well.

Plaintiffs then filed this suit,[2] contending that these false statements have diminished the value of Davric's property and will continue to do so, and that they have also caused substantial damages to Ricci's reputation.

**II.**

consideration of greater Portland area sites.

[2]    Plaintiffs also alleged violations of the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., and Maine's Site Location of Development Act, 38 M.R.S.A. §§ 481-490.  The dismissal of these counts was not appealed.

Sovereign immunity presents a threshold issue for Davric's suit for damages against the Postal Service. The Postal Service argues that under § 409(c) of Title 39, codifying the Postal Reorganization Act, all state-law tort claims against the Postal Service must be brought under the Federal Tort Claims Act. However, the Postal Service says, the FTCA explicitly exempts most intentional torts, including defamation and tortious interference, from its waiver of sovereign immunity. See 28 U.S.C. § 2680(h). Therefore, the Postal Service concludes, the defamation and interference claims must be dismissed. Davric responds that the Postal Reorganization Act's general "sue and be sued" provision, see 39 U.S.C. § 401(1), governs all suits against the Postal Service not cognizable under the FTCA, and since defamation suits are not cognizable under the FTCA, they fall under the PRA's general waiver of sovereign immunity.

These contending constructions of the statutory scheme present a close question. The text of the individual sections does not present a clear answer, but the structure of the scheme argues against Davric's position. The legislative history of these provisions affords little guidance. Absent evidence of Congressional intent to have the Postal Service, a quasi-public entity, held liable for intentional torts under state law, the exclusion from the FTCA's waiver of sovereign immunity controls.

Enacted in 1970, the PRA established the Postal Service as a quasi-public entity that was to compete on essentially level ground with private enterprise. To that end, § 401(1) provides that the Postal Service can "sue and be sued," generally waiving the immunity from suit it would otherwise have as a public entity.[3] See 39 U.S.C. § 401(1). See also Loeffler v. Frank, 486 U.S. 549, 556 (1988) ("By launching 'the Postal Service into the commercial world' and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's 'cloak of sovereignty' and given it the 'status of a private commercial enterprise.'") (citing Library of Congress v. Shaw, 478 U.S. 310, 317 n.5 (1986)). However, § 409 of the PRA provides that tort suits brought against the Postal Service are governed by the provisions of the FTCA.[4] See 39 U.S.C. § 409(c); see also 28 U.S.C. § 2679(a) (providing that claims against "sue and be sued" agencies must be brought through the FTCA where "cognizable" under the FTCA).[5] Finally,

_____

[3] 39 U.S.C. § 401 reads in relevant part, "The Postal Service shall have the following general powers: (1) to sue and be sued in its official name. . ."

[4] 39 U.S.C. § 409, entitled "Suits by and against the Postal Service," provides in relevant part, "(c) The provisions of chapter 171 and all other provisions of title 28 relating to tort claims [the FTCA] shall apply to tort claims arising out of activities of the Postal Service."

[5] The full text of 28 U.S.C § 2679(a) provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal

§ 2680 lists exceptions to the FTCA's waiver of sovereign immunity, including the exemption of most state intentional torts.[6] See 28 U.S.C. § 2680(h).

The issue turns on how these provisions are characterized, that is, whether state intentional torts such as defamation fall within the scope of the FTCA but are excepted from its waiver of sovereign immunity and so suit cannot be brought under the PRA, or whether they simply fall outside of its scope as a result of their exception and so suit under the PRA is permissible. While murky on this point, the structure of the statutory scheme, taken altogether, suggests the former interpretation.

By its terms, § 409(c) of the PRA limits the scope of the more general waiver of sovereign immunity contained in § 401(1). For state tort claims arising out of the activity of the Postal Service, § 409(c) compels the application of the FTCA and its attendant provisions. Read in context, then, § 409(c) of the PRA is best

---

agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."

[6] 28 U.S.C. § 2680 reads in relevant part, "The provisions of this chapter and section 1346(b) of this title shall not apply to -- * * * (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," with limited exception for law enforcement officials.

understood to waive the immunity from suit that the Postal Service would otherwise enjoy as a federal entity only insofar as that immunity would have been waived under the FTCA.  Such a reading accords with the language in 28 U.S.C. § 2679(a) providing that for claims that fall within the purview of the FTCA, claims against sue-and-be-sued agencies are to be treated like a claim against any other federal agency.  Two distinct avenues for interpreting § 409(c) both arrive at this conclusion.

First, the reference in PRA § 409(c) to "chapter 171 and all other provisions of title 28 relating to tort claims" can be read to incorporate the FTCA in its entirety as the exclusive vehicle for bringing state tort claims against the Postal Service, including the FTCA's waiver of immunity from suit in § 1346(b), its attendant procedural requirements, the exclusiveness of its remedy compelled by § 2679(a), and its exceptions, as provided in § 2680.  On this approach, the question becomes simply whether the claim presented is a state tort claim "arising out of the activities of the Postal Service" under § 409(c).  If so, then the claim is governed by the FTCA as a whole, including its exception of defamation and interference claims from its waiver of sovereign immunity.

Davric argues that once the claim falls outside the scope of the FTCA's waiver of sovereign immunity, it then must fall back within the ambit of the PRA's more general waiver.  The best basis in the

statutory language for this claim is the introduction to the exceptions provision, which states that the provisions of the FTCA "shall not apply" to defamation suits. See 28 U.S.C. § 2680. If the FTCA shall not apply to defamation claims, Davric says, then defamation claims are not cognizable under the FTCA and hence the general waiver of immunity in the PRA applies. However, attention to the remainder of § 2680 makes clear that this reading is not tenable. Section 2680(b) excepts any claim "arising out of the loss, miscarriage, or negligent transmission of letters or postal matter" from the FTCA's waiver of sovereign immunity. Following Davric's proposed construction of the statutory scheme, this provision, § 2680(b), would be rendered mere surplusage, as suits against the Postal Service for loss of postal matter could then simply be brought under the PRA's waiver of sovereign immunity rather than under the FTCA. Since this outcome is not conceivably within Congress's intent, Davric's suggested construction of the statutory scheme must be rejected, and the best reading of the statutory scheme affords the Postal Service with the protections afforded all other federal agencies by the exceptions to the FTCA's waiver of immunity, including the exception for state intentional tort claims.

Alternatively, PRA § 409(c) can be read to incorporate each individual provision of Title 28 relating to state tort claims directly into the PRA's general waiver of sovereign immunity. On this approach,

§ 409(c) compels the application of the exceptions provision, 28 U.S.C. § 2680, to tort claims arising out of the activity of the Postal Service. Section 409(c) limits the scope of the general waiver of sovereign immunity in § 401(1), and by this reference incorporates the exceptions provided in the FTCA. Hence, plaintiffs' defamation and tortious interference claims must be dismissed, as they fall within these incorporated exceptions.

Davric argues that prior interpretations of sue-and-be-sued waivers by the Supreme Court compel a broader reading of the waiver of immunity in the PRA. First, in Loeffler, the Supreme Court held that sovereign immunity did not bar recovery of prejudgement interest against the Postal Service in a Title VII action. 486 U.S. at 565. In reaching this conclusion, the Court noted that the PRA, including the sue-and-be-sued provision in § 401(1), reflected Congress's "general design that the Postal Service 'be run more like a business than its predecessor.'" Id. at 556 (citation omitted). Given that the purpose of such sue-and-be-sued clauses is to enable such agencies to engage in commercial and business transactions on equal footing with the private sector, Davric argues that courts ought to construe such clauses liberally and impose exceptions on their waiver reluctantly, in order to effectuate that purpose. See Loeffler, 486 U.S. at 554, citing Federal Housing Admin. v. Burr, 309 U.S. 242, 245 (1940).

In F.D.I.C. v. Meyer, 510 U.S. 471 (1994), the Supreme Court held that the predecessor of the FDIC, an agency authorized to "sue and be sued," could be sued in a Bivens constitutional tort action. While recognizing that § 2679(a) of the FTCA sought to put sue-and-be-sued agencies on the same footing as other federal agencies with respect to "claims which are cognizable" under the FTCA, id. at 476, the Court concluded that constitutional torts were not cognizable under the FTCA and therefore such an action against the FDIC was not barred, id. at 477-78. Again the Court emphasized that sue-and-be-sued clauses should be read broadly. Id. at 481. Davric argues that under the reasoning of Meyer, and in light of the direction in Meyer and Loeffler to construe clauses such as § 401(1) broadly, the fact that defamation claims are excepted from the FTCA should be interpreted to render them not cognizable under the FTCA and therefore within the scope of the general sue-and-be-sued waiver of the PRA.

While Davric is correct that both of these opinions contain language suggesting that sue-and-be-sued clauses should be construed broadly to effectuate their purpose, a closer look at the reasoning of these opinions shows they do not aid Davric. In each case where courts have allowed tort cases to proceed against sue-and-be-sued agencies outside of the procedures and limitations of the FTCA, the plaintiffs advanced federal claims -- either federal constitutional torts or

-11-

federal statutory torts.[7]  See Meyer, 510 U.S. 471 (federal

constitutional tort); Global Mail Ltd. v. United States Postal Serv.,

142 F.3d 208 (4th Cir. 1998) (claim under Lanham Act); Federal Express

Corp. v. United States Postal Serv., 141 F.3d 536 (6th Cir. 1998)

(same); United States v. Q Int'l Courier, Inc., 131 F.3d 770 (8th Cir.

1997) (same).

Plaintiffs ask this court to extend this reasoning to those

state common law torts excepted by § 2680, such as the defamation and

interference claims they advance in this case.  However, the reasoning

of the Supreme Court in Meyer is explicitly premised on the fact that

the Bivens claim presented in that action arose under federal rather

than state law.  Meyer reasoned that the constitutional tort was not

cognizable under the FTCA because it did not fall within the scope of

the waiver of sovereign immunity in § 1346(b), as that waiver was

limited to claims where "a private person" would be liable "in

accordance with the law of the place where the act or omission

occurred."  Meyer, 510 U.S. 477-78.  The Court has consistently held

that this reference to "the law of the place" means the law of the

state, which provides the source of substantive liability under the

---

[7]    Another case interpreting the scope of the PRA's sue-
and-be-sued clause, Franchise Tax Bd. v. United States Postal
Serv., 467 U.S. 512 (1984), did not involve a tort at all, but
rather a statutory wage garnishment procedure to assist the
state in collecting its tax revenues.  As such it did not
involve the FTCA at all.

FTCA.  Id. at 478 (citing cases).  Since by definition "federal law, not state law, provides the source of liability" for a federal constitutional tort claim, it is not cognizable under the FTCA and therefore the claim can fall within the general sue-and-be-sued waiver.  Id. at 477-78.

Davric's argument fails.  As the defamation and tortious interference claims Davric advances clearly arise under the law of the place -- i.e., Maine's substantive law of tort liability -- they are claims that are cognizable under the FTCA.  Since the claims are cognizable under the FTCA, all the requirements and limitations upon which the FTCA's waiver of sovereign immunity is conditioned apply.  Indeed, many of the cases relied upon by Davric make clear that the FTCA governs state tort claims against the Postal Service.  See, e.g., Loeffler, 486 U.S. at 562; Federal Express, 151 F.3d at 540-41; Global Mail, 142 F.3d at 214-15.  Hence the defamation and tortious interference claims must be dismissed.

Section 2680(h) of the FTCA embodies an understandable policy against compelling the public fisc to bear the costs of intentional torts committed by public employees.  The extent to which this policy rationale extends to quasi-public agencies is not  immediately evident.  More importantly, however, that determination is properly one of legislative policy judgment.  Cf. Westfall v. Erwin, 484 U.S. 292, 300 (1988) (noting that Congress is "in the best position to provide

-13-

guidance" on complex questions of sovereign immunity).  In the absence

of any evidence that Congress did not intend to afford quasi-public,

sue-and-be-sued agencies the protection of the exemption from suit for

state intentional torts, and in light of the judicial policy of

construing waivers of sovereign immunity narrowly, we cannot find that

the statutory scheme indicates that the Postal Service has waived its

immunity from suit for defamation or tortious interference claims.

Therefore, Davric's claims against the Postal Service were properly

dismissed.

### III.

Davric also appeals the dismissal of defendant Joseph Leonti.

Plaintiffs sued Leonti individually on all three claims.  The district

court dismissed the defamation and tortious interference claims against

Leonti, substituting the United States as party defendant for Leonti

under the Westfall Act, see 28 U.S.C. § 2679(d), and dismissed the

constitutional tort claim against Leonti for failure to state a claim.

Plaintiffs appeal.

### A.

First, plaintiffs challenge the substitution of the United

States for Leonti on the defamation and tortious interference claims.

The defendants moved to substitute the United States for Leonti as a

defendant pursuant to 28 U.S.C. § 2679(d)(1), which provides that

"[u]pon certification by the Attorney General that the defendant

-14-

employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the action "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." Id. The motion was accompanied by a certification from the United States Attorney[8] that Leonti was acting within the scope of employment at the time of the alleged incidents. The district court granted the motion as to the tortious interference and defamation claims (though not as to the alleged constitutional torts, as they fall outside the scope of the FTCA), substituted the United States, and dismissed the claims.[9] Davric appeals, arguing that while the court recognized that the certification is provisional and subject to judicial review, the plaintiffs were unable to make the requisite factual showing that Leonti was acting outside the scope of his employment because they were not allowed to pursue discovery on the issue.

        The law of immunity strikes a balance between the public interest in having injurious acts compensated and the competing public

_____

        [8]    The Attorney General has delegated her certification authority under this statute to the United States attorneys. 28 C.F.R. § 15.3(a).

        [9]    Because the Supreme Court has held that 28 U.S.C. § 2679(b)(1) immunizes federal employees from suit even when an FTCA exception precludes recovery against the United States, the substitution in this case effectively dismisses the claim. See United States v. Smith, 499 U.S. 160, 165 (1991); Nasuti v. Scannell, 906 F.2d 802, 810 n.14 (1st Cir. 1990).

interest in safeguarding the ability of responsible governmental employees to "faithfully carry out their duties without fear of protracted litigation in unfounded damages suits." See Aversa v. United States, 99 F.3d 1200, 1203 (1st Cir. 1996). In 1988 Congress amended the FTCA to reinforce federal employees' individual immunity from tort actions with the Federal Employees Liability Reform and Tort Compensation Act of 1988. These amendments -- commonly known as the "Westfall Act" because they were a response to Westfall v. Erwin, 484 U.S. 292 (1988) -- afford federal employees who allegedly commit a common law tort absolute immunity where they were acting within the scope of employment, see 28 U.S.C. §§ 2679(b)(1) and 2679(d), but allow the suit to proceed against the federal government unless some exception to the FTCA applies, Aversa, 99 F.3d at 1203.

The mechanism through which the federal employee is protected in these circumstances is certification by the Attorney General under 28 U.S.C. § 2679(d) that the employee was acting within the scope of employment. Once such a certification is made, the court dismisses the federal employee from the case, and substitutes the United States as defendant. This certification, however, does not conclusively establish that the United States should be substituted, but rather is provisional and subject to judicial review. See Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995). Upon a showing that the employee was acting outside the scope of employment, as determined by the

-16-

applicable state law, that employee may be re-substituted. <u>Aversa</u>, 99 F.3d at 1208. Plaintiffs challenge the certification here that Leonti was acting within the scope of his employment, and appeal the denial of their efforts to conduct discovery in order to uncover the facts necessary to show that Leonti was not acting within the scope of employment.

Where a plaintiff asserts that a defendant acted outside the scope of his or her employment despite the Attorney General's certification to the contrary, the burden of proof is on the plaintiff. <u>See</u> <u>Day</u> v. <u>Massachusetts Air Nat'l Guard</u>, 167 F.3d 678, 685 (1st Cir. 1999); <u>Lyons</u> v. <u>Brown</u>, 158 F.3d 605, 610 (1st Cir. 1998). State law controls the determination of whether a federal employee was acting within the scope of employment. <u>See</u> <u>Lyons</u>, 158 F.3d at 609; <u>Aversa</u>, 99 F.3d at 1208-09.

In order to strike the substitution of the United States, plaintiffs here must show that, under Maine law, Leonti was acting outside the scope of his employment at the time of the incident out of which the claims arose. Maine courts apply § 228 of the Restatement (Second) of Agency on the issue of scope of employment. <u>See</u> <u>Bergeron</u> v. <u>Henderson</u>, 47 F. Supp. 2d 61, 65 (D. Me. 1999), <u>citing</u> <u>McLain</u> v. <u>Training and Dev. Corp.</u>, 572 A.2d 494, 497 (Me. 1990). Under Maine law an employee's actions are within the scope of employment if they are of the kind that he is employed to perform, they occur within authorized

time and space limits, and they are actuated by a purpose to serve the employee's master. See Restatement (Second) of Agency § 228, at 504 (1958), cited in Bergeron, 47 F. Supp. 2d at 65. Under the Restatement (Second), an action may be within the scope of employment although "forbidden, or done in a forbidden manner," see Restatement (Second) § 230, or even "consciously criminal or tortious," see id. § 231. Actions "relating to work" and "done in the workplace during working hours" are typically within the scope. See id. §§ 229, 233, 234. Whether the motivation of the employee is to serve the master's interest or his or her own private purposes is often an important element in this determination. See id. §§ 228, 235-236; see also Lyons, 158 F.3d at 609. Where seemingly work-related acts taken by the federal employee are done with a private purpose on the employee's part to retaliate or discriminate against the plaintiff, they may fall outside the scope of employment under Maine law; where the acts were done in good faith to serve the employer's interest, even if the federal employee's judgment was mistaken, then the conduct is likely within the scope of employment. See Lyons, 158 F.3d at 610.

The district court refused to re-substitute Leonti for the United States as party defendant, affirming the magistrate judge's conclusion that the plaintiffs had not produced any evidence to find that Leonti was acting outside the scope of his employment under Maine law. We affirm this determination. Disputes over Westfall

-18-

certifications arise in two distinct procedural contexts. First, the Attorney General's certification might accept the plaintiff's characterization of the incidents at issue, but nevertheless certify that the relevant incident occurred while the employee was acting within the scope of employment. On the other hand, this court has also held that the Attorney General may dispute the plaintiff's characterization of the incident and other subsidiary, immunity-related facts, though the certificate must assume some harm-causing incident. See Wood v. United States, 995 F.2d 1122, 1126 (1st Cir. 1993) (en banc). Where the movant contends that, even accepting the allegations of the complaint as true, the defendant acted within the scope of employment, the motion to substitute may be decided on the face of the complaint (akin to a motion to dismiss); where the movant contests the facts as pled, the motion may be decided by reference to affidavits and other evidence outside the pleadings (akin to a summary judgment motion); and where the plaintiff demonstrates that a genuine issue of material fact exists with respect to the scope of employment, the district court may hold an evidentiary hearing to resolve the material factual disputes about the immunity-related facts. See Taboas v. Mlynczak, 149 F.3d 576, 581 (7th Cir. 1998); see also Day, 167 F.3d at 686; Lyons, 158 F.3d at 610.

Davric's complaint alleges that Leonti made defamatory statements about the Davric property and Ricci at a series of meetings

-19-

at the Postal facility with Postal Service employees during work hours. The complaint presents a number of statements, allegedly defamatory and made in an angry tone. The complaint also alleges that at one point, a Postal Service official informed Leonti that he was "on his own" with regard to one of the defaming statements. For the purposes of this motion, the defendants do not contest any of these alleged facts, but instead contend that Leonti's actions in these incidents, even as characterized in the complaint, arose while he was acting within the scope of his employment.

While it is true that where plaintiff's proffer "so warrants" and the facts alleged "are in controversy" a district court may hold evidentiary hearings to resolve scope-of-employment issues, see Lyons, 158 F.3d at 610, that is not this situation. Here, Davric's complaint contains allegations about the content, tone, and location of the defaming statements. Yet Davric has not advanced any viable theory that Leonti was not acting within the scope of his employment under Maine law when making these statements. Plaintiffs argue in their brief that Leonti "exceeded the scope of his employment in the avalanche of derogatory comments he directed at Plaintiffs" and in the "series of highly defamatory charges" he directed at plaintiffs, "made in a very angry fashion." However, even if true, the mere fact that Leonti made statements that were

-20-

defamatory does not render his actions outside the scope of employment. Plaintiffs place particular emphasis on the alleged statement by a senior Postal Service official to Leonti in regard to one of the defamatory statements that he was "on his own on that one." Again, even if true, the fact that the Postal Service did not endorse all of Leonti's opinions as expressed does not render the statements outside the scope of employment.[10] Cf. Aversa, 99 F.3d at 1211 (under New Hampshire law and the Restatement, statements of government employee were with scope of employment even when they plainly were not authorized).

Rather, under the Westfall Act, the relevant analysis must be made under Maine law, and under Maine law, even

---

[10] Davric's brief makes a passing reference that Leonti may have been motivated by "personal animus" in making the defamatory statements. However, the brief does not adequately argue that Leonti had a private purpose in defaming the plaintiffs independent from his duties as an employee of the Postal Service so as to render his actions outside the scope of employment, nor does the brief or the complaint suggest any reason for Leonti to have such animus toward the plaintiffs apart from those duties. Plaintiffs never allege Leonti had any personal motive to malign them, nor do they allege any relationship or incident with Leonti that may have created personal animus. Indeed, their theory that he retaliated against them because of their interference in the Postal Service's site selection process belies any personal motive. Since plaintiffs do not present such allegations or argument, we do not consider the issue.

-21-

accepting the allegations of the complaint as true, Leonti's actions were within the scope of employment. Leonti was director of the distribution center. He was at a meeting of Postal Service employees called during work hours and at work for the purpose of explaining the Postal Service's site selection process. While some of Leonti's statements may have amounted to defamation, Davric provides no reason to believe that the statements did not further, and were not intended to further, the Postal Service's purposes in justifying its site selection process to its own employees. Cf. Restatement (Second) § 228(1)(c). Actions taken in the workplace to serve the purposes of the employer are prototypical actions within the scope of employment under the Restatement principles outlined above.

Nor is Davric's argument that discovery was necessary availing. Davric does not say what facts, if discovered, would lead to a viable theory that Leonti was acting outside of the scope of employment. Indeed, the only specific facts on which Davric indicates it sought discovery were already alleged in the complaint, and do not undermine the determination that Leonti was acting within the scope of his employment.[11] In order for discovery of immunity-related facts to

_____

[11] Davric's attorney offered a Rule 56(f) affidavit indicating that plaintiffs believed discovery would reveal that, as alleged in the complaint, Leonti was advised in front of non-clients by a Postal Service attorney that he was "on his own" with regard to one of the defamatory statements, and also that discovery might uncover videotapes of the meetings at which the

be warranted, the plaintiff must indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory that the individual defendant was acting outside the scope of employment.  Davric fails to do so, and so we affirm the substitution of the United States for Leonti on the defamation and tortious interference claims.

### B.

Davric also sued Leonti in his individual capacity for damages for a violation of plaintiffs' constitutional rights, claiming that Leonti's actions constitute a constitutional tort under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).[12]  The district court dismissed the claim against Leonti on the grounds that a plaintiff may not recover for an alleged constitutional tort for defamation unless his damages resulted from some action taken by the

---

alleged defamatory statements were made.  These facts are already alleged in the complaint, and were not disputed by the defendants for the purposes of the motion to substitute. Moreover, there is no suggestion that either the content of the purported videotapes or the confirmation of the statement by the Postal Service attorney would show that Leonti was not acting at his place of employment performing his duties as director of the distribution center in furtherance of the purposes of the Postal Service in the incidents out of which the claim arose.

[12]    Davric's complaint also included the Postal Service in this count, but the Postal Service was dismissed from the count by the district court because Bivens actions are not available against federal agencies.  See Meyer, 510 U.S. at 486.  Davric does not appeal this dismissal.

defendant apart from the alleged defamation, and Davric failed to allege any such additional steps undertaken by Leonti. On appeal, Davric argues that Leonti deprived plaintiffs of due process in making the allegedly defamatory statements, both because it deprived them of "an identified interest in life, liberty or property protected by the Fifth Amendment" and because his conduct "shocks the conscience."[13]

While the plaintiffs fail to identify expressly what "identified interest in life, liberty or property" Leonti's actions deprived them of, they go on to cite several cases regarding harm to "good name" or "reputation." See, e.g., Goss v. Lopez, 419 U.S. 565, 574 (1975); Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). Therefore we assume the protected interest Davric asserts is in plaintiffs' reputations.

Defamation alone does not constitute a constitutional tort under Bivens. In order to recover in a Bivens action, the plaintiff has to suffer a loss that results from some further action by the defendant in addition to the defamation itself. As the Supreme Court

---

[13] Plaintiffs' brief also makes a passing reference that "the allegations are sufficiently clear to assert that Defendant Leonti violated the Plaintiff's First Amendment rights by attempting to punish them for their Whistle Blowing . . ." To the extent that this suggests a Bivens claim for an unconstitutional retaliation for the exercise of First Amendment rights, plaintiffs have failed to adequately present this argument either here or before the district court, and so it is waived. Therefore we do not reach the question of whether such an allegation would state a claim for a Bivens action.

held in Siegert v. Gilley, "so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action." 500 U.S. 226, 234 (1991). See also Paul v. Davis, 424 U.S. 693, 701 (1976) ("stigma" to reputation alone is an injury to neither liberty nor property sufficient to invoke Due Process Clause); Aversa, 99 F.3d at 1215-16. To hold otherwise would effectively elevate state common law torts to constitutional status.

Here, Davric identifies no damages resulting to either its properties or Ricci apart from the alleged reputational harms, and identifies no additional actions undertaken by Leonti that might have caused additional damages. Plaintiffs' suggestion that Leonti's actions "shock the conscience" also must fail -- Leonti's conduct simply fails even to approach the sort of "extreme or intrusive physical conduct" which is the gravamen of this doctrine. See, e.g. Brown v. Hot, Sexy and Safer Prod., Inc., 68 F.3d 525, 531 (1st Cir. 1995), cert. denied, 516 U.S. 1159 (1996). Thus while Davric's claims may adequately state a state tort claim, they fail to state a constitutional claim cognizable in a Bivens action. The Bivens claim was properly dismissed.

**IV.**

The decision of the district court dismissing the action is affirmed.

-25-