Mi'chal **FOLLEY**, Plaintiff,

v.

William J. **HENDERSON**, Postmaster General, et al., Defendants.

No. C–3–96–446.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 4, 2001.

Aaron G. Durden, Dayton, OH, for plaintiff.

Gregory Gordon Lockhart, United States Attorney's Office, Dayton, OH, Robert L. Sawicki, United States Postal Service Law Department, Philadelphia, PA, David Edmund Stenson, David E. Stenson & Associates, Dayton, OH, Robert Jerome Surdyk, Jenks Surdyk & Cowdry Co. LPA, Dayton, OH, for defendants.

Tommy Lewis, Huber Heights, OH, pro se.

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT (DOC. #37) FILED BY DEFENDANTS TOM NEAL, RONALD DALE AND POSTMASTER GENERAL WILLIAM J. HENDERSON; PLAINTIFF GRANTED LEAVE TO FILE AMENDED COMPLAINT WITHIN 14 DAYS FROM DATE; MOTION FOR LEAVE TO SUBSTITUTE UNITED STATES AS DEFENDANT (DOC. #42) FILED BY DEFENDANTS TOM NEAL AND RONALD DALE OVERRULED, WITHOUT PREJUDICE TO RENEWAL, IF AND WHEN PLAINTIFF FILES AMENDED COMPLAINT; THIS DECISION AND ENTRY IS NOT A FINAL, APPEALABLE ORDER

RICE, Chief Judge.

This litigation stems from the termination of Plaintiff Mi'chal Folley's employment with the United States Postal Service ("USPS"), purportedly for poor job performance. Following her discharge, Folley filed suit against Postmaster General William J. Henderson, in his official capacity as head of the USPS,[1] and three USPS employees, Tommy Lewis, Tom Neal and Ronald Dale. (Complaint, Doc. #1). In the first three Counts of her eight-Count Complaint, Folley alleges that each of the Defendants violated Title VII by engaging in sexual harassment, gender discrimination and retaliation. In Counts 4, 5 and 6, Folley asserts state-law claims against the USPS and Lewis for battery, assault and intentional infliction of emotional distress. In Counts 7 and 8, she sets forth state-law claims against the USPS for negligent retention and negligent supervision. Pending before the Court is a Motion to Dismiss/Motion for Summary Judgment (Doc. #37) filed by Defendants USPS, Neal and Dale (collectively "the Movants").[2] Also pending before the Court is a Motion to Substitute the United States as Defendant (Doc. #42) filed by Neal and Dale.

I. *Factual Background* [3]

Mi'chal Folley began working for the USPS in 1994. In January and February, 1996, Folley's supervisor, Tommy Lewis, subjected her to "repeated, sexually suggestive, unwelcomed and unwarranted comments of a sexual nature[.]" (Doc. #1 at ¶ 10–12). Lewis also touched her "in a sexual manner on different occasions," and he "made sexual overtures to her." (*Id.* at ¶ 12). On one occasion in particular, Lewis cornered Folley and kissed her. (*Id*. at ¶ 43).

On February 28, 1996, Folley received an oral warning about leaving the keys inside a work vehicle. (Plaintiff's Response to First Set of Request for Admissions, attached to Doc. #37 at Exh. A–1).[4]

---

1. Folley's Complaint actually names former Postmaster General Marvin Runyon as a Defendant. Given that Folley sued Runyon in his official capacity, however, the current Postmaster General, William J. Henderson, is now the proper representative of the USPS. Rule 25(d)(1) of the Federal Rules of Civil Procedure mandates that when a public official sued in his official capacity resigns, his successor automatically is substituted as the defendant. For purposes of its analysis herein, the Court will refer to the claims against Henderson in his official capacity as claims against the USPS.

2. Defendant Lewis, who is separately represented, has neither joined in the pending Motion nor filed a Motion of his own.

3. For purposes of ruling on the pending Motion to Dismiss/Motion for Summary Judgment, the Court will construe the facts and all reasonable inferences drawn therefrom in the light most favorable to the Plaintiff, who is the non-moving party.

4. A copy of the Plaintiff's written response to the Defendants' request for admissions is attached to the Defendants' Motion for Summary Judgment/Motion to Dismiss. Although

Two days later, Folley discovered that her employment had been terminated. (*Id.*). As a result, she requested an appointment with an EEO counselor on March 1, 1996. (Plaintiff's Admission No. 1). In connection with her request, Folley submitted four handwritten pages, detailing what she perceived as sexual harassment by Lewis. (*Id.* at Exh. A–1). Among other things, she recounted the incident when Lewis grabbed her and kissed her. (*Id.*). According to Folley, USPS supervisor Tom Neal saw the incident, yelled at Lewis and tried to dissuade her from bringing a sexual harassment charge. (*Id.*). Folley also alleged that her termination was a direct result of the incident when Lewis kissed her. (*Id.*).

On March 8, 1996, Folley voluntarily withdrew her request for EEO counseling. (Plaintiff's Admission No. 5 and Exh. A–2). The withdrawal of her request for counseling was based on stipulations set forth in a settlement agreement that she signed the same day. (Plaintiff's Admission No. 6). The agreement provided for Folley to be reinstated and reassigned to another office in Beavercreek, Ohio, effective March 9, 1996, without back pay. It also provided that "the allegations and charges of sexual harassment and termination are hereby resolved." In addition, the agreement stated that no "official discussing" of Folley's allegations would occur at the Beavercreek office. Finally, it stated that "no reprisal will be taken against the complainant for filing this EEO complaint." (*Id.* at Exh. A–2).

the response has not been authenticated (because the Defendants cannot authenticate something written by the Plaintiff), the Plaintiff has not challenged the authenticity of that document. If the Plaintiff does dispute the authenticity of her response, she must notify the Court, within three days from date, and it will revisit the issue.

After Folley started working at the Beavercreek, Ohio, office, co-workers and supervisors began making "negative comments" and spreading rumors about her. (Plaintiff's Admission No. 8). The employees at the Beavercreek office also stated that she was likely to file a lawsuit against them if any disagreement occurred. (Complaint, Doc. # 1 at ¶ 20). In addition, Folley believes that her new supervisor, Greg Belt, "made every attempt to make it uncomfortable for [her] to work," hoping that she would quit her job. (Plaintiff's Admission No. 8.). In June, 1996, USPS employee Ronald Dale assaulted Folley for unspecified reasons, causing injury to her arm and dental braces. (Complaint, Doc. # 1 at ¶ 21). Shortly thereafter, she was fired, purportedly for poor job performance. (*Id.* at ¶ 22).

On July 16, 1996, Folley filed a formal complaint with the Postal Service's EEO office, alleging race, sex and disability discrimination, as well as retaliation.[5] (Plaintiff's Admission No. 9 and Exh A–3). In the factual section of her EEO complaint, Folley alleged that she "experienced sexual harassment, sexual discrimination, racial discrimination, [and] retaliation as a result of [her] prior claim for the above charges against the U.S.P.S."[6] She also alleged that EEO officer Arper Tentman threatened to fire her if she filed a charge of discrimination. (*Id.*). On August 26, 1996, Folley received a "right-to-sue" letter from the EEOC. (Complaint, Doc. # 1 at ¶ 9). She commenced the present litigation on November 8, 1996.

5. In the present case, Folley does not allege racial or disability harassment or discrimination. Her claims are confined to sexual harassment, sexual discrimination and retaliation. (Complaint, Doc. # 1).

6. Folley's EEO complaint fails to identify the nature of the "above charges" at issue.

## II. *Analysis*

As a means of analysis, the Court first will review the Title VII claims set forth in Counts 1–3 of Folley's Complaint. The Court then will turn to the various state-law claims asserted in Counts 4–8.

### A. *Title VII Sexual Harassment, Discrimination and Retaliation (Counts 1–3)*

In Counts 1–3 of her Complaint, Folley alleges that each of the Defendants violated Title VII by engaging in sexual harassment, sexual discrimination and retaliation. (Doc. # 1 at ¶ 29–41). The Movants argue that Counts 1–3 must be dismissed, insofar as they are directed toward Defendants Neal and Dale, because Postmaster General William Henderson is the only proper Defendant with respect to Title VII claims. (Doc. # 37 at 4). This argument is undoubtedly correct. *See, e.g., Herndon v. Henderson,* 238 F.3d 421, 2000 WL 1827956 (6th Cir. Dec. 7, 2000) (unpublished) (recognizing that the Postmaster General is the only proper defendant in a Title VII action brought by an aggrieved employee); *Stiles v. Frank,* 972 F.2d 348, 1992 WL 188111 (6th Cir. Aug. 6, 1992) (unpublished) ("The district court properly dismissed all defendants except the Postmaster General because only the head of a department or agency may be named as a defendant in a civil action brought to redress employment discrimination practices involving a federal agency."); *see also* 42 U.S.C. § 2000e–16(c). Accordingly, Counts 1–3 of Folley's Complaint will be dismissed, insofar as they relate to Defendants Neal and Dale.

With respect to the Title VII claims against Postmaster General Henderson, who has been sued in his official capacity, Folley has identified the proper Defendant in order to hold the USPS liable. Nevertheless, the Movants argue that these claims are not viable because Folley previously settled them. (Doc. # 37 at 5). As noted above, Folley entered into a March 8, 1996, settlement agreement in which she voluntarily resolved her "allegations and charges of sexual harassment and termination." (*Id.* at Exh. A–2). Insofar as Folley seeks to litigate events that are the subject of the settlement agreement, the Postmaster General is entitled to summary judgment and/or the dismissal of her Title VII claims. "A plaintiff who knowingly and voluntarily agrees to settle his claims is bound by his agreement." *Wyche v. Procter & Gamble,* 772 F.Supp. 982, 984 (S.D.Ohio 1990) (Rubin, J.); *see also Eppley v. Henderson,* 208 F.3d 213, 2000 WL 125749 (6th Cir. Jan. 28, 2000) (unpublished) ("Eppley does not dispute on appeal the district court's conclusions that his claim was settled at the conclusion of proceedings before the EEOC and that he can no longer bring an action based on the earlier charge. Therefore, the district court's order dismissing this complaint is affirmed.").

In opposition to the foregoing conclusion, Folley raises three arguments. *First,* she contends that the settlement agreement does not bar her present claims, because USPS representatives breached its terms. *Second,* she asserts that the agreement is void, because she was "coerced" into accepting it. *Third,* she asks the Court to "consider the doctrine of continuing violations...." (Doc. # 40 at 9–10).

Upon review, the Court rejects each of Folley's arguments. If USPS representatives breached the settlement agreement, as Folley alleges, then she may have a potential action for breach of contract.[7] A

---

7. Before bringing a contract action for a breach of the settlement agreement, however, Folley would be required to exhaust the administrative remedies provided by 29 C.F.R. § 1614.504(a), which obligates a complainant

breach of the agreement, however, would not revive her ability to litigate the settled Title VII claims. The Sixth Circuit has adopted this position (which has been expressed by other courts), albeit in an unpublished decision, reasoning:

> Although there is not a great deal of authority on this issue, the parties seem to agree that a discrimination plaintiff can enter into a settlement, and that doing so forecloses the right to sue for the underlying Title VII violation. The Supreme Court has stated, in dicta, that "an employee may waive his cause of action under Title VII as part of a voluntary settlement." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Various courts have interpreted this to mean that parties who enter into settlements of Title VII claims waive their right to proceed on the underlying claim. *See, e.g., Pilon v. University of Minnesota*, 710 F.2d 466 (8th Cir.1983); *Vermett v.*

*Hough*, 606 F.Supp. 732, 745 (W.D.Mich. 1984); *Sherman v. Standard Rate Data Service Inc.*, 709 F.Supp. 1433 (N.D.Ill. 1989). Any other rule would virtually eliminate the incentive for defendants to settle Title VII suits.

*Jones v. PPG Indus., Inc.*, 937 F.2d 608, 1991 WL 122364 (6th Cir. July 9, 1991) (unpublished)[8]; *see also Witte v. Lakeside Inn and Casino*, 61 F.3d 914, 1995 WL 437939 (9th Cir. July 25, 1995) (unpublished) (holding that the breach of a settlement agreement does not revive settled Title VII claims)[9]; *Breen v. Norwest Bank Minnesota*, 865 F.Supp. 574, 577–578 (D.Minn.1994) ("Even where the plaintiff alleges a breach of the underlying settlement agreement, the plaintiff's exclusive remedy is for breach of contract; she is precluded from reviving the underlying claims.").

■ With respect to Folley's second argument, the record is simply devoid of evidence supporting her claim that she was

---

to provide the EEO Director with timely, written notice of an agency's failure to comply with a settlement agreement, and to request that the terms of the settlement be implemented or that the complaint be reinstated. The record is devoid of evidence suggesting that Folley has met this requirement, which is jurisdictional. *See, e.g., Sanders v. Reno*, 186 F.3d 684, 685 (5th Cir.1999). In any event, the present action is not a contract action to enforce the terms of the settlement agreement.

8. In *Jones*, the Sixth Circuit recognized the general rule that an employer's breach of a settlement agreement does not revive the underlying Title VII claims. Nevertheless, the court assumed, purely arguendo, that a "preexisting[,] bad-faith intent to breach a settlement agreement" might render the agreement void and allow a plaintiff to litigate the settled claims. *Jones*, 937 F.2d 608, 1991 WL 122364 at *1. Even if a "bad faith" exception exists, however, Folley does not suggest that the USPS entered into the settlement agreement with a preexisting, bad faith intent to breach it.

9. In *Witte*, the Ninth Circuit looked to state law to determine whether the breach of a settlement agreement would revive a plaintiff's Title VII claim. Applying Nevada law, the court concluded that the breach of a settlement agreement would not revive a Title VII claim. *Witte*, 61 F.3d 914, 1995 WL 437939 at *2 ("In Nevada, a settlement extinguishes the settled claims.... Witte validly settled his Title VII claim, so if the casino breached, Witte had a common law cause of action for breach of contract, not a federal Title VII cause of action."). Insofar as state law might apply to Folley's attempt to revive settled Title VII claims (an issue the Sixth Circuit has not addressed), Ohio law precludes her from doing so. *See, e.g., Board of Commissioners of Columbiana County v. Samuelson*, 24 Ohio St.3d 62, 63, 493 N.E.2d 245, 247 (1986) (recognizing that a settlement agreement "extinguishes or merges the original rights or claims and correlative obligations and, where the agreement is executory, substitutes for the original claim the new rights and obligations agreed to").

"coerced" into accepting the settlement agreement. In support of this proposition, Folley cites "Ex. A" to her Memorandum. This citation is an apparent reference to her affidavit, which is the only exhibit attached to that Memorandum. (*See* Folley affidavit, attached to Doc. # 40). Nowhere in her affidavit, however, does Folley mention the settlement agreement or make any claim of coercion. Furthermore, in the settlement agreement itself, she expressly indicated that the agreement was not the product of "harassment, threats, coercion or intimidation." (Doc. # 37 at Exh. A–2).

■ Finally, with respect to Folley's third argument, she has failed to demonstrate the applicability of the "continuing violation" doctrine. "If a plaintiff can show that the defendant has engaged in a continuing violation, then a court may consider all relevant actions allegedly taken pursuant to an employer's discriminatory policy or practice, including those that would otherwise be time-barred" by the applicable statute of limitations. *Phillips v. Cohen,* 3 Fed.Appx. 212, 2001 WL 92146 (6th Cir. Jan. 22, 2001) (unpublished). In the present case, however, the statute of limitations is not at issue, and Folley has failed to articulate how the "continuing violation" doctrine demonstrates the viability of her settled claims.

Based on the reasoning and citation of authority set forth above, the Court concludes that Folley's Title VII claims against Postmaster General Henderson must be dismissed, insofar as they are based upon events that occurred prior to the March 8, 1996, settlement agreement.

Having reviewed the record, however, the Court cannot determine whether *all* of the events underlying Folley's Title VII claims are covered by the settlement agreement. As noted above, Folley entered into the agreement on March 8, 1996, extinguishing any Title VII claims based upon events which occurred prior to that date. Thereafter, on July 16, 1996, she filed the EEO charge which ultimately led to the present litigation. In that charge, Folley alleged that she had experienced sexual harassment, sexual discrimination, racial discrimination and retaliation in April, May and June, 1996, *after* the settlement of her prior EEO complaint. (Doc. # 37 at Exh. A–3). Additionally, in the "Facts" section of her Complaint in this action, Folley alleges, among other things, that she was "subject to a hostile work atmosphere" after the March 8, 1996, settlement agreement. (Doc. # 1 at ¶ 20). Insofar as Folley may have been discriminated against or retaliated against after entering into the settlement agreement, any Title VII claims based upon such actions would not appear to be precluded by that agreement. Unfortunately, Folley's Complaint fails to make clear whether Counts 1, 2 and 3 are based upon events which occurred after March 8, 1996.[10] As a result, the Court will grant Folley leave to file an amended Complaint, provided that she can do so consistent with the requirements of Fed. R.Civ.P. 11. Her amended Complaint must be filed within 14 days from date, and it must clarify whether her Title VII claims are based on any acts of discrimination or retaliation which occurred after March 8, 1996. Insofar as Folley's Title

---

**10.** Most, if not all, of the specific allegations accompanying Counts 1–3 appear to relate to events which occurred prior to March 8, 1996. (Doc. # 1 at ¶ 29–41). As noted above, however, Folley's Complaint does refer to events occurring after that date, and her EEO charge alleged that she had experienced sexual harassment, sexual discrimination, racial discrimination and retaliation in April, May and June, 1996, after the settlement of her prior EEO complaint. (Doc. # 37 at Exh. A–3). Consequently, the Court cannot determine, with certainty, whether Folley's Title VII claims are based solely on events that occurred prior to the March 8, 1996, settlement agreement.

VII claims are based on events which preceded March 8, 1996, however, her claims are not viable, and the Movants are entitled to summary judgment on them.[11]

### B. *Plaintiff's Assault and Battery Claims (Counts 4–5)*

In Counts 4 and 5 of her Complaint, Folley sets forth state-law assault and battery claims against Defendant Tommy Lewis and Defendant "Post Office."[12] (Doc. # 1 at ¶ 42–51). As noted above, Lewis, who is separately represented, has neither joined in the pending Motion to Dismiss/Motion for Summary Judgment nor filed a Motion of his own. Consequently, the Court will not address the assault and battery claims against Lewis.

In their Motion to Dismiss/Motion for Summary Judgment, the Movants argue that the Court lacks jurisdiction over Folley's assault and battery claims against the "Post Office" for three reasons. *First,* they contend that the Federal Tort Claims Act ("FTCA") represents an exclusive waiver of sovereign immunity for tort claims against agencies of the United States. Under that Act, the Movants contend that tort claims must be brought against the United States itself, rather than against government agencies such as the USPS or the Postmaster General. Given that Folley has not named the United States as a Defendant, the Movants contend that the Court lacks jurisdiction over her assault and battery claims against the Postmaster General. *Second,* the Movants contend that the Court lacks jurisdiction over the assault and battery claims against the Postmaster General because the waiver of sovereign immunity contained in the FTCA does not apply to such claims. *Third,* the Movants argue that Folley is barred from pursuing her assault and battery claims under the FTCA because she has not demonstrated compliance with the Act's administrative exhaustion requirements.

 Upon review, the Court finds each of the foregoing arguments to be persuasive. The FTCA is "the exclusive vehicle for bringing state tort claims" against government agencies such as the Postal Service.[13] *Davric Maine Corp. v. U.S. Postal Serv.,* 238 F.3d 58, 62 (1st Cir.2001). Furthermore, "tort causes of action subordinate to the FTCA must conform to the rules, standards, and procedures of that act[.]" *Federal Express Corp. v. U.S. Postal Service,* 151 F.3d 536, 540 (6th Cir.1998). Among other things, such actions must be initiated against the United States itself, rather than against a federal agency. *Id.* at 540; *see also Good v. Ohio Edison Co.,* 149 F.3d 413, 418 (6th Cir.1998) (noting that "an FTCA action naming only the United States Post Office and several individual postal workers as defendants must be dismissed for lack of jurisdiction because the United States of

---

**11.** With respect to any acts of discrimination or retaliation which occurred prior to March 8, 1996, Folley is instructed to omit such allegations from any amended Complaint, as her prior settlement agreement bars her pursuit of Title VII claims based upon them.

**12.** The Court presumes that Folley's reference to "Defendant Post Office" is a reference to Postmaster General William Henderson, who has been sued in his official capacity. Folley has not named the "Post Office" as a Defendant.

**13.** Despite Folley's arguments to the contrary, the fact that the Postal Service's charter legislation contains a "sue or be sued" provision does not alter the fact that her state-law tort claims against the government are actionable only under the FTCA. *See, e.g., Federal Express Corp. v. U.S. Postal Serv.,* 151 F.3d 536, 540 (6th Cir.1998). In other words, the fact that the Postal Service generally may "sue and be sued in its official name" (*see* 39 U.S.C. § 401(1)) does not constitute an abandonment of its insulation from state-law tort suits, which still must be brought directly against the United States under the FTCA. *Id.*

America is the only proper defendant in such an action"); *Griffin v. United States Postal Service,* 181 F.3d 101, 1999 WL 282628 (6th Cir. April 30, 1999). In the present case, Folley has named the Postmaster General as a Defendant rather than the United States. Consequently, her assault and battery claims against the Postmaster General are subject to dismissal.

■■■■■ Even if Folley could cure the foregoing defect by amending her Complaint to name the United States as a Defendant, her assault and battery claims against the government still would remain subject to dismissal for the second reason set forth by the Movants. In particular, the waiver of immunity contained in the FTCA does not apply to claims of assault or battery. 28 U.S.C. § 2680(h); *see also United States v. Shearer,* 473 U.S. 52, 54, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). In addition, Folley would be precluded from pursuing assault and battery claims against the United States for the third reason cited by the Movants. "In order for a person to file a tort claim under the FTCA, it is required that [s]he 1) give written notice of a claim sufficient to enable the agency to investigate the claim and 2) place a value (or 'sum certain') on the claim." *Glarner v. U.S. Dept. of Veterans Admin.,* 30 F.3d 697, 700 (6th Cir. 1994). These administrative prerequisites "derive from 28 U.S.C. § 2675, which provides procedures for filing claims against the government." *Id.* They are also found in 39 C.F.R. § 912.5(a). In the present case, Folley filed an EEO complaint in July, 1996, alleging discrimination and retaliation. (Doc. # 37 at Exh. A–3). Even

if that filing could be construed as satisfying the first requirement,[14] it failed to place a sum certain on Folley's claim and, therefore, did not satisfy the second requirement. Although placing a sum certain on a claim is a "technical" requirement, it is nevertheless a jurisdictional prerequisite for commencing an FTCA action in the Sixth Circuit. *Glarner,* 30 F.3d at 700; *Zuber v. United States,* 229 F.3d 1155, 2000 WL 1276895 (6th Cir. Aug. 30, 2000). Consequently, the Court lacks subject matter jurisdiction over Folley's assault and battery claims against the Postmaster General, and permitting her to amend her Complaint to name the United States as a Defendant would not change that result. As a result, the Movants' Motion to Dismiss/Motion for Summary Judgment (Doc. # 37) will be sustained, insofar as it relates to the assault and battery claims against the Postmaster General (Counts 4–5).

*C. Plaintiff's Intentional Infliction of Emotional Distress, Negligent Retention and Negligent Supervision Claims (Count 6–8)*

In Count 6 of her Complaint, Folley sets forth a state-law claim for intentional infliction of emotional distress against Defendant Tommy Lewis and Defendant "Post Office." As noted above, the Court will not address the claim against Lewis, who has neither joined in the pending Motion to Dismiss/Motion for Summary Judgment nor filed a Motion of his own. In Counts 7 and 8 of her Complaint, Folley sets forth state-law claims against only Defendant "Post Office" for negligent retention and negligent supervision.[15]

---

**14.** A claimant typically satisfies the administrative prerequisites of 28 U.S.C. § 2675 by completing an "SF95" form. The completion of such a form will fulfill both of the requirements discussed above. The completion of an SF95 form is not necessary, however, provided that a claimant files some document that gives sufficient written notice of her claim and places a sum certain on the claim. *Glarner,* 30 F.3d at 700.

**15.** Once again, the Court presumes that Folley's references to "Defendant Post Office" are references to Postmaster General William

With respect to the claims against the "Post Office," or more accurately, the Postmaster General, who is actually the named Defendant, the Movants argue that the Court lacks jurisdiction over those claims. In support, the Movants contend, once again, that Folley's emotional distress, negligent retention and negligent supervision claims are actionable only under the FTCA. They then argue that Folley improperly has sued the Postmaster General, rather than the United States itself. In addition, the Movants contend, once again, that Folley cannot maintain her emotional distress, negligent retention and negligent supervision claims under the FTCA, because she has failed to satisfy the administrative prerequisites discussed by the Sixth Circuit in *Glarner*.

For the same reasons set forth in its analysis of Folley's assault and battery claims, the Court agrees that it lacks jurisdiction over her emotional distress, negligent retention and negligent supervision claims against the Postmaster General. In short, these claims against the government are governed by the FTCA, under which a plaintiff must sue the United States rather than a federal agency. Furthermore, Folley has failed to demonstrate compliance with the jurisdictional administrative prerequisites discussed in *Glarner*. As a result, the Movants' Motion to Dismiss/Motion for Summary Judgment (Doc. # 37) will be sustained, insofar as it relates to the emotional distress, negligent retention and negligent supervision claims against the Postmaster General (Counts 6–8).

### D. *Other Issues*

In opposition to the foregoing analysis, Folley insists that she may maintain state-law tort claims against Defendants Tom Neal and Ronald Dale personally. (*See, e.g.*, Plaintiff's Memorandum, Doc. # 40 at 2–8). In support, Folley argues that Neal

and Dale acted outside the scope of their employment when they committed tortious acts against her. (*Id.*).

 If a government employee acts outside the scope of his employment when engaging in tortious conduct, an action against the United States under the FTCA will not lie, and the aggrieved employee may file a state-law tort action against the tortfeasor. *Davric Maine Corp.*, 238 F.3d at 65. Consequently, the Court does not dispute that, if Neal and Dale committed torts against Folley while acting outside the scope of their employment with the U.S. Postal Service, the FTCA would not bar common law tort claims against them. The fundamental problem with Folley's argument, however, is that her Complaint does not contain any state-law tort claims against Neal or Dale. As noted above, Folley's various state-law claims are set forth in Counts 4–8 of her Complaint. By their express language, those Counts are directed toward only Defendants "Post Office" and Tommy Lewis. (Doc. # 1 at ¶ 42–66).

Based upon a review of Folley's Memorandum, however, it is evident that she believes Defendants Neal and Dale engaged in tortious conduct against her. (Doc. # 40 at 2–8). It is equally evident that she believes Neal and/or Dale violated her First Amendment rights, and she seeks to hold them liable for this violation. (*Id.* at 8–9). Consequently, the Court will grant Folley leave to amend her Complaint, provided that she can do so consistent with the requirements of Fed.R.Civ.P. 11, to plead tort claims against those Defendants. The Court also will grant her leave to assert a First Amendment claim against Neal and/or Dale, if she can do so consistent with Rule 11, as her present Complaint is devoid of such a claim. As

---

Henderson, who has been sued in his official capacity.

noted, *supra*, in the Court's analysis of Folley's Title VII claims, her amended Complaint must be filed within 14 days from date.

In anticipation of the Court allowing Folley to amend her Complaint to assert claims against them, Neal and Dale have filed a Motion for Leave to Substitute the United States as a Defendant (Doc. # 42).[16] In addition, Neal and Dale argue in their summary judgment Reply Memorandum that any tort claims against them would be precluded by the Civil Service Reform Act—an issue which they contend the Sixth Circuit has not addressed. (Doc. # 43 at 5). They also argue that a First Amendment claim against them is not cognizable in the employment context. (*Id.* at 2–4).

Given that Folley has not yet filed an amended Complaint, the Court need not address the arguments raised by Neal and Dale regarding substitution of the United States, the applicability of the Civil Service Reform Act and the viability of a First Amendment claim. The Court hereby overrules their Motion for Leave to Substitute the United States as a Defendant (Doc. # 42), without prejudice to renewal, if and when Folley amends her Complaint to assert state-law tort claims or a First Amendment claim against them. Finally, if Neal and Dale believe that any tort or constitutional claims against them are not cognizable, they may file a Motion setting forth their arguments after Folley files her amended Complaint.[17]

### III. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Motion to Dismiss/Motion for Summary Judgment (Doc. # 37) filed by Defendants Tom Neal, Ronald Dale and Postmaster General William Henderson is sustained. Plaintiff Mi'chal Folley is granted 14 days to file an amended Complaint, consistent with Rule 11 of the Federal Rules of Civil Procedure and the Court's analysis herein. The Motion for Leave to Substitute the United States as a Defendant (Doc. # 42) filed by Defendants Tom Neal and Ronald Dale is overruled, without prejudice to renewal, if and when Folley files an amended Complaint. Given that Folley's claims against Defendant Tommy Lewis remain pending, this Decision and Entry *is not* a final, appealable order.

---

16. Substitution of the United States as the Defendant would result in Neal and Dale being immune from liability and would obligate Folley to proceed against the government under the FTCA. The United States Code mandates the substitution of the United States as a party defendant in a civil action when the government certifies that a federal employee was acting within the scope of his employment at the time in question. *See* 28 U.S.C. § 2679(d). Such certification is not conclusive, however, and a district court may reinstate claims against individual government employees if a plaintiff establishes that the employees were in fact acting outside the scope of their employment. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

17. Neal and Dale understandably first mentioned the Civil Service Reform Act and the alleged non-viability of a First Amendment claim in their Reply Memorandum (*Doc.* # 43), given that Folley first mentioned her proposed state-law and constitutional claims against them in her Memorandum Opposing Summary Judgment (Doc. # 40).