**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 20-2157

ANA VIZCARRONDO-GONZÁLEZ,

Plaintiff, Appellant,

v.

THOMAS J. VILSACK, Secretary of Agriculture; UNITED STATES
DEPARTMENT OF AGRICULTURE; ELIUD RIVERA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Thompson, Circuit Judges.

José G. Fagot Díaz, with whom Manuel E. López Fernández was
on brief, for appellant.

Gregory Bennett Conner, Assistant United States Attorney,
with whom W. Stephen Muldrow, United States Attorney, and Mariana
E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division were on brief, for appellees Vilsack and United
States Department of Agriculture.

Julio E. Gil de Lamadrid for appellee Rivera.

June 28, 2024

**HOWARD**, **Circuit Judge**.    Plaintiff-appellant Ana Vizcarrondo-González ("Vizcarrondo") alleged she had been sexually harassed by a co-worker, Eliud Rivera, and sued both Rivera and her employer, Thomas J. Vilsack, the Secretary of Agriculture, and the United States Department of Agriculture (collectively, "USDA").    At the summary-judgment stage, only three claims remained: a claim of a discriminatory hostile work environment and a claim of retaliation, both against the USDA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; and a claim of assault and battery against Rivera under Article 1802 of the Puerto Rico Civil Code, P.R. Laws tit. 31, § 5141.    The district court entered summary judgment on these claims in favor of each of the defendants.    Vizcarrondo appeals from that judgment, largely copying and pasting in her appellate brief the arguments she made before the district court.

Vizcarrondo has waived all her arguments that there was error in the district court's entry of summary judgment on her Title VII claims against the USDA.    And with respect to the district court's entry of summary judgment against her on her assault and battery claim, Vizcarrondo has also waived any argument resisting that conclusion.    We affirm.

**I.**

A. Factual History

We refer to the district court's opinions for fuller

- 3 -

discussions of the facts. Vizcarrondo-González v. Perdue ("Vizcarrondo I"), Civ. No. 16-2461, 2020 WL 1459070, at *2-8 (D.P.R. Mar. 20, 2020); Vizcarrondo-González v. Perdue ("Vizcarrondo II"), Civ. No. 16-2461, 2020 WL 6276072, at *1-2 (D.P.R. Oct. 26, 2020).

Vizcarrondo was a GS-7 Plant Protection and Quarantine Officer with the Animal and Plant Health Inspection Service ("APHIS") of the USDA. This position is ranked higher than the one held by Rivera, her co-worker, who was a GS-5 Plant Protection and Quarantine Technician with the APHIS.

The APHIS has a written Anti-Harassment Policy Statement and provides training to its employees on workplace harassment prevention policies and procedures for making a complaint. Vizcarrondo received a copy of the Policy Statement and underwent the training. The Policy Statement provides: "[A]n employee making a complaint of harassment based on a protected basis must contact the APHIS Office of Civil Rights, Diversity and Inclusion (OCRDI) Counseling and Resolution Branch . . . within 45 days of the alleged incident." The OCRDI Counseling and Resolution Branch is responsible for guiding and acting on Equal Employment Opportunity ("EEO") complaints.[1]

---

[1] "[EEO] laws prohibit specific types of job discrimination in certain workplaces." Equal Employment Opportunity, U.S. Dep't of Labor, https://www.dol.gov/general/topic/discrimination [https://perma.cc/JT4W-SWDE].

- 4 -

1. <u>Vizcarrondo's 2014 Allegations Which Lead to the Discipline of Rivera in 2015 ("Pre-Suspension Conduct")</u>

Vizcarrondo did not contact the APHIS's OCRDI Counseling and Resolution Branch, at all, in 2014 to report her sexual harassment claims. On May 24, 2014, Vizcarrondo instead complained to her then-immediate supervisor, José Sánchez, alleging that Rivera had sexually harassed her on various occasions, including on the previous day. Vizcarrondo's allegations are as follows.

Vizcarrondo reported that, on May 23, 2014, Rivera entered her office, stated, "Ave Maria, each time that I eat an ice cream cone and lick it I think [of] Ana," and acted out licking an ice cream cone (the "May 2014 ice cream incident"). Vizcarrondo added that Rivera previously had stared at her while licking an ice cream cone.[2]

---

[2] Vizcarrondo's written statement of the incident specifically stated:

> On May 23, 2014 . . . [w]hile I was working, the Technician Eliud Rivera came and enters into the office and with aloud voice and close to my person told me, and I quote: "Ave Maria, each time that I eat an ice cream cone and lick it I think in Ana[].["] He told me this while he was doing the movement of licking an ice cream cone. Very disgusting to my person.
> . . .
> Should be mention that this is not the first time that this happen, nights back ago, while I was sitting in the desk, Mr. Eliud Rivera stand in front of the glass window which is located in front of the desk at the Terminal D in the Pre Departure office and Mr.

Vizcarrondo supplemented her Statement on May 27, 2014 ("the Addendum"). Vizcarrondo stated in the Addendum:

> On April 23, 2014 during the night shift, I was assigned to the Terminal A at the Jet Blue USDA Booth. When we were working there, we saw Mr. Eliud Rivera walking through the hall and walking straight to open the door of our Cashier Office . . . . [H]e didn't open it.
> He didn't because Mrs. Heidi Garmos was expressing her breast milk for her baby breastfeeding inside that room at that time and she had the door locked. . . .
> When Mr. Eliud Rivera . . . ask to us . . . about why he cannot open that door?? We explained to him and told him, well... "You can't open that door because Mrs. Heidi Garmos is taking out her breast milk [i]n that office[].["] Immediately, after he heard that he told to us: "Why not? If I want to see[]!!!!![")

Vizcarrondo later, in June 2014, gave a statement under oath in which she added that about a month before she filed her complaint, Rivera showed her "a picture of a young female that he had on his cell phone" and asked Vizcarrondo if she had "ever been with a young male." Vizcarrondo stated that she "did not appreciate his comments" and that she "find[s] it very uncomfortable to be around [Rivera]."

Vizcarrondo did not report these events to an EEO

---

Rivera did the same thing, he stand in front of me and with a chocolate ice cream on his hand, he lick his ice cream cone looking me forward through the glass window.

- 6 -

Counselor or anyone in the APHIS's OCRDI Counseling and Resolution Branch within forty-five days of them occurring.

2. <u>USDA's Response and Related Proceedings</u>

Vizcarrondo testified in her deposition that Sánchez appeared surprised and worried by her allegations and that he promised to "take pertinent action."

On May 27, 2014, Sánchez emailed the Port Director, Norma Rosario, about the allegations, asking for advice on how to proceed. He also discussed the allegations with Eunice Everett from the APHIS's Human Resources Division. Everett informed Sánchez that he would need to investigate the allegations, tell Rivera about the allegations, and, if necessary, separate Vizcarrondo and Rivera at work.

Later that day, Sánchez notified Rivera of the sexual-harassment allegations against him and that the allegations would be investigated. Sánchez warned Rivera that he must refrain from inappropriate behavior. Sánchez also contacted the employee that Vizcarrondo said witnessed the May 2014 ice cream incident.

The next day, May 28, 2014, Sánchez filed a request for a misconduct investigation with the Administrative Investigations and Compliance Branch ("AICB") of the APHIS. Also on that day, Rosario prepared a letter addressed to Rivera, stating:

> [D]ue to serious allegations that have surfaced, <u>you are being placed on paid excused</u>

absence until further notice. Until these allegations have been thoroughly investigated, you are not to report to your duty location or to perform any official duties unless instructed to do so by your supervisor.

You will remain in this status until you are officially informed otherwise. . . .

You are hereby directed not to access any USDA building unless you have your supervisor's authorization and by appointment only. You are directed not to access official voice mail, computers and/or computer systems, Outlook, employee websites, SharePoint sites, equipment, etc., during your absence. You are further instructed not to contact any employees of the Agency, except your supervisor, with regard to any work matters unless specifically authorized to do so in this letter . . . .

(emphasis added). Rivera acknowledged receipt of the letter on May 30, 2014, and he surrendered his USDA badge, keys, and other items that same day.

The AICB assigned Personnel Misconduct Investigator Anthony A. Gabaldon to investigate Vizcarrondo's sexual-harassment allegations. Gabaldon conducted telephonic interviews to take statements under oath from Rivera, Vizcarrondo, and named witnesses. Before each interview, Gabaldon identified himself as a Personnel Misconduct Investigator for the AICB. Gabaldon did not at any time during the investigation state that he was an EEO investigator or that he was conducting an EEO investigation.

Gabaldon issued his "Report of Investigation" as to Rivera on July 31, 2014. The Report disclosed Gabaldon's factual

- 8 -

findings and the supporting documentation. It did not opine on what remedial actions were appropriate, if any.

Although Rivera was almost immediately placed on mandatory paid leave in May 2014, it was temporary pending the investigation. On September 8, 2014, Rosario notified Rivera that his temporary leave was to be lifted, although the APHIS had yet to determine the appropriate discipline and still viewed Vizcarrondo's allegations as "very serious." Rivera was instructed to report to work the following day and to "only have work related contact with Ms. Ana Vizcarrondo, and only when it is absolutely necessary. [He was to] avoid her as much as possible."

Rosario also notified Vizcarrondo of Rivera's return to work and told Vizcarrondo to report Rivera to management if he contacted her unnecessarily.

On October 1, 2014, Vizcarrondo emailed Investigator Gabaldon (who was not management), requesting a status update on the investigation and informing Gabaldon of her concerns that Rivera was permitted to be near her at the workplace. Gabaldon forwarded the email to Everett, who forwarded it to Rosario. Rosario responded to Everett that, contrary to the above instructions, Vizcarrondo had not communicated her concerns to any of her supervisors. Rosario added that she personally was unaware of any new incident between Vizcarrondo and Rivera and that she was still "waiting on recommendation of the Disciplinary Action

against [Rivera]."

On October 24, 2014, Vizcarrondo demanded via email an appointment with Rosario "because the orders of this memorandum have been violated by the other party [(Rivera)]." Rosario responded the same day, stating: "I will be in my office on Monday at 0800 AM. Please confirm the time you will like to meet with me. We ned [sic] to give prompt attention to this matter." The record does not show that Vizcarrondo ever replied to Rosario or made any further effort to meet with Rosario to address her concerns. For the rest of 2014, Vizcarrondo did not make any additional reports about Rivera.

On January 2, 2015, Rosario handed Rivera a "Notice of Proposed Suspension of Five (5) Calendar Days" as a disciplinary measure for engaging in "[c]onduct [u]nbecoming a Federal [e]mployee." The disciplinary measure was finalized on May 11, 2015, and Rivera served his suspension from June 1 to June 5, 2015.

Vizcarrondo admits that since October 2014 (pre-suspension), Rivera has not addressed her directly about anything outside of work, nor has he offered her ice cream, discussed women who are breast feeding, or asked her about "being with younger people." On July 31, 2015 (post-suspension), Vizcarrondo's attorneys filed a letter with the APHIS's State Plan Health Director, stating in a conclusory manner that Rivera "attempts to be near Vizcarrondo to intimidate her with a cavalier attitude

- 10 -

that he can continue with his unlawful conduct and will not be disciplined." The letter provides no specific allegations and fails to acknowledge the disciplinary action that recently had been taken against Rivera.[3]

Several months later, on December 7, 2015, Vizcarrondo initiated for the first time informal EEO counseling, alleging she was sexually harassed by Rivera in May 2014.[4] Her claims were not resolved through the informal procedures. Vizcarrondo received a Notice of Right to File a formal EEO complaint on February 17, 2016, and she filed such a complaint on March 2, 2016. She alleged gender discrimination, sexual harassment, and retaliation. Specifically, she claimed that on May 24, 2014, "she was sexually harassed by a colleague, and . . . management failed to properly address the incident by retaining the alleged harasser as an employee."

On May 6, 2016, the USDA Office of Adjudication issued

---

[3]  We do not address the post-suspension allegations that Vizcarrondo failed to report to her employer, i.e., that once Rivera returned to work, he would whistle, sing, and stare at her. See Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 54, 57 (1st Cir. 2006) (affirming district court's grant of summary judgment on hostile work environment claim covering 1997 to 2001, inter alia, because plaintiff complained to supervisor only in 1997, which did not notify employer about the alleged harassment thereafter).

[4]  Vizcarrondo denies that she had failed to commence EEO proceedings prior to this date, citing the July 31, 2015 letter from her attorneys which stated that "[o]n May 24, 2014, Vizcarrondo filed her internal EEO grievance involving this matter with her night supervisor."

- 11 -

its Final Agency Decision, dismissing Vizcarrondo's EEO complaint in its entirety for untimeliness and failure to state a claim.

### 3. The Jacket Incident

On February 19, 2016, after Vizcarrondo already received the Notice of Right to File, she sent an email to EEO Specialist Lauren Hill ("Hill") alleging that one month earlier, Rivera had grabbed a jacket off the back of the chair on which Vizcarrondo was sitting and brushed her "buttocks, [her] low back and back" in the process (the "jacket incident"). Hill responded that Vizcarrondo's supervisor should address the incident, as Hill already had "closed [Vizcarrondo's] informal EEO complaint and issued [her] Notice of Right to File." This jacket incident was not mentioned by the agency in its Final Agency Decision.

The jacket incident allegation was forwarded to Vizcarrondo's then-supervisor, José Jiménez. Jiménez contacted Rivera and two witnesses in February 2016 about the incident and requested written statements from them; none of the individuals could corroborate Vizcarrondo's account of the event.

Vizcarrondo herself has given inconsistent accounts. At certain times, Vizcarrondo stated that "[t]he mentioned jacket brushed my buttocks, my lower back and my back." She later stated that it was Rivera's hand, not the jacket, that touched her.

### B. Procedural History

Vizcarrondo filed her complaint against the USDA and

Rivera in the District of Puerto Rico on August 8, 2016. She brought many claims under federal and Puerto Rico law. The claims that remained at the summary-judgment stage were: discriminatory and retaliatory hostile work environment claims against the USDA under Title VII, 42 U.S.C. §§ 2000e, et seq., and an assault and battery tort claim against Rivera as to the jacket incident under Article 1802 of Puerto Rico's Civil Code.[5]

The defendants moved for summary judgment as to those three claims in the spring of 2018. The district court addressed the Title VII and Article 1802 claims in two separate opinions and ultimately ruled in the defendants' favor in toto.

First, on March 20, 2020, the district court granted summary judgment in favor of the USDA as to Vizcarrondo's Title VII claims. Vizcarrondo I, 2020 WL 1459070, at *1. The court held:

> Plaintiff's [discriminatory] hostile work environment action fails at various levels: non-exhaustion; prompt and adequate employer response to the incidents plaintiff complained about in May 2014; employer's lack of knowledge -- actual or constructive -- about incidents that plaintiff attributes to Rivera after he was reinstated in September 2014; and ultimately, accepting that those later incidents occurred, they do not rise to the level of severity or pervasiveness that the law requires for a showing of a hostile work

---

[5] The district court previously dismissed all Puerto Rico law and federal constitutional law claims against the USDA and all claims against Rivera save the Article 1802 claim. Those dismissed claims are not at issue.

- 13 -

environment. Id. at *27. Because the court determined that Rivera's post-suspension conduct was insufficiently severe to create a hostile work environment, it also held that Vizcarrondo failed to establish a retaliatory hostile work environment claim against the USDA based on that conduct. Id. at *24.

The court ordered further briefing on the Article 1802 claim against Rivera. Id. at *27-28. On April 16, 2020, the government filed with the district court a Scope of Employment Certification for the January 14, 2016, jacket incident. The certification stated: "Eliud Rivera[] was acting within the scope of his federal employment . . . at the time of the jacket removal incident which gave rise to the asserted tort claim." Vizcarrondo challenged the certification.

There was an evidentiary hearing on the certification on October 8, 2020, after which the district court issued an opinion and order granting summary judgment on the Article 1802 claim in favor of Rivera. Vizcarrondo II, 2020 WL 6276072, at *1. The court held that, under Puerto Rico law, Rivera was acting within the scope of his employment at the time he grabbed the jacket off of Vizcarrondo's chair, so pursuant to the Westfall Act and the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("FTCA"), the United States would be substituted as the defendant. Id. at *2-4. The court further stated: "[G]iven that Ms. Vizcarrondo

- 14 -

complains of assault and battery, the Government has not consented to be sued for intentional torts except in limited instances not present here, and Ms. Vizcarrondo failed to exhaust administrative remedies under the [FTCA], the tort claim must be dismissed." Id. at *1.

## II.

Our review of a district court's grant of summary judgment is de novo. Frederique-Alexandre v. Dep't of Nat. & Env't Res., 478 F.3d 433, 436 (1st Cir. 2007). So, too, is our review of a district court's conclusions regarding an employee's scope of employment. McIntyre ex rel. Est. of McIntyre v. United States, 545 F.3d 27, 40 (1st Cir. 2008). We review the district court's underlying factual findings for clear error. Id.

### A. Vizcarrondo's Arguments as to Her Title VII Claims Against the USDA Fail on Several Appellate Waiver Grounds

Title VII protects against discriminatory employment practices, including "sex-based discrimination that creates a hostile or abusive work environment." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (quoting Billings v. Town of Grafton, 515 F.3d 39, 47 (1st Cir. 2008)). A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).

- 15 -

A plaintiff's discriminatory hostile work environment claim will not succeed unless she first exhausts her administrative remedies, see Rodriguez v. United States, 852 F.3d 67, 78 (1st Cir. 2017), and also establishes:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Roy v. Correct Care Sols., LLC, 914 F.3d 52, 62 (1st Cir. 2019) (quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)). The last factor requires evidence that the employer either created or tolerated the hostile atmosphere. Wilson v. Moulison N. Corp., 639 F.3d 1, 7 (1st Cir. 2011). When the alleged harasser is the plaintiff's co-worker rather than supervisor, "the plaintiff must demonstrate that the employer knew or should have known about the harassment yet failed to take prompt and appropriate remedial action." Id.

To establish a Title VII retaliation claim, a plaintiff must demonstrate: (1) she engaged in protected conduct; (2) "her employer took a material adverse action against her"; and (3) the adverse action is causally related to her protected conduct.

- 16 -

Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013).  A hostile work environment, "if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for Title VII retaliation cases."  Noviello v. City of Bos., 398 F.3d 76, 89 (1st Cir. 2005).

Vizcarrondo's appellate brief on these issues essentially is a copy and paste of what was in her district court brief, rendering her arguments waived for two reasons: (1) they are raised in a perfunctory and undeveloped manner, and (2) there is nothing in the opening brief providing any reasoning on the contention that the district court erred in entering summary judgment in favor of the USDA.[6]  It is well-settled that we will deem arguments that are raised in a perfunctory or undeveloped manner to be waived.  See Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also Conboy v. U.S. Small Bus. Admin., 992 F.3d 153, 157 (3d Cir. 2021) ("Counsel for [appellants] simply took the summary judgment section of his District Court brief and copied and pasted it into his appellate brief, with minor changes such as swapping 'Defendant' for 'Appellee.' . . . This is not

---

[6]  Although the USDA makes this waiver argument in its opposition brief, Vizcarrondo did not file a reply brief to respond to the argument.

proper appellate advocacy." (internal citation omitted)); United States v. Coleman, 610 F. App'x 347, 356 & n.3 (5th Cir. 2015) (argument copied and pasted from briefs filed in other cases was waived, given it was "conclusory, nonspecific and unpersuasive").

We will also find waiver if a party fails to address in its opening brief a basis on which the district court ruled against that party. See Cioffi v. Gilbert Enters., Inc., 769 F.3d 90, 93–94 (1st Cir. 2014) (litigant must explain "why a particular order is erroneous"); Watson v. Ordonez, No. 18-1688, 2020 WL 6788144, at *1 (1st Cir. May 1, 2020) ("The district court dismissed the action . . . . Appellant fails to develop any relevant argument showing that the district court erred in doing so, and he thereby waives the issue."); Elite Sportswear Prods., Inc. v. N.Y. Life Ins. Co., 270 F. App'x 153, 154 (3d Cir. 2008) ("[Appellant's] failure to challenge the District Court's conclusions with respect to the timeliness of its tort claims and the adequacy of its contract claims in its opening brief constitutes a waiver of these issues on appeal."). This is because "[j]udges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Rodríguez, 659 F.3d at 175.

### 1. Discriminatory Hostile Work Environment Claim Based on Rivera's Pre-Suspension Conduct[7]

We need not address whether Vizcarrondo exhausted her administrative remedies as to Rivera's pre-suspension conduct (although we highly doubt she has)[8] because she has waived any

_____

[7] Vizcarrondo has waived the argument that her claims as to Rivera's pre-suspension conduct (e.g., the May 2014 ice cream incident) and his post-suspension conduct (e.g., Rivera's attempt to intimidate with his cavalier attitude and the jacket incident) should constitute one unlawful employment practice. Other than conclusory, unsupported statements, Vizcarrondo does not challenge the district court's conclusions that "the [initial] conduct she complained of ceased after she reported it to Sánchez on May 24, 2014," and that the USDA investigated and disciplined Rivera for that conduct. Vizcarrondo I, 2020 WL 1459070, at *12. She develops no argument as to why the district court erred in ruling that "the agency's intervening action [against Rivera] placed the pre-jacket conduct outside of the realm of the hostile work environment claim arising out of the jacket incident." Id. We will therefore review Vizcarrondo's pre-suspension claims separately from her post-suspension claims.

[8] Vizcarrondo complained to her supervisor in May 2014 that Rivera was sexually harassing her. Despite receiving training and documentation on how to initiate EEO proceedings, she did not contact an EEO counselor or any personnel in APHIS's OCRDI Counseling and Resolution Branch about these claims until December 2015 -- well beyond the forty-five days she had to initiate the EEO process. Vizcarrondo nonetheless argued to the district court that the EEO process began when she informed Sánchez and Gabaldon of Rivera's conduct. The district court rejected her argument, observing that "alternate grievance processes do not replace the EEO process," Vizcarrondo I, 2020 WL 1459070, at *11, and neither Sánchez nor Gabaldon was an "agency official[...] logically connected with the EEO process," id. at *10 (alteration in original). Vizcarrondo does not rebut this reasoning on appeal but instead repeats verbatim the arguments from her district court brief. Nor does Vizcarrondo develop any argument as to why the district court erred in concluding, alternatively, that Vizcarrondo's email to Hill in 2016 about the jacket incident failed to exhaust her administrative remedies under the continuing-violation theory because the USDA's discipline of Rivera severed her pre-suspension conduct claims from the jacket

argument that the USDA's discipline of Rivera failed to absolve the agency of liability. The district court found that Vizcarrondo's supervisors promptly and appropriately responded to her allegations:

> Within days of her complaint to Sánchez, management warned Rivera to refrain from inappropriate conduct; placed him on a forced leave of absence; and began an investigation. Rivera returned to work three months later, on September 9, 2014: (1) pending a final agency decision; and (2) on the condition that he have no contact with plaintiff unless "absolutely necessary[.]" Subsequently, the USDA suspended Rivera without pay for five days in accordance with its Guide for Disciplinary Penalties, informing him that: (1) his conduct was considered a "serious infraction;" (2) the suspension served to "correct [his] behavior;" and (3) future misconduct could lead to further disciplinary action "up to and including removal[.]"
> In context, the USDA promptly investigated plaintiff's allegations and took adequate remedial measures reasonably aimed at preventing any harassment.

Vizcarrondo I, 2020 WL 1459070, at *15 (second alteration in original) (internal citations omitted). Such remedial measures, per the district court, "foreclose liability." Id. Vizcarrondo develops no argument on appeal as to why the district court was

---

incident. See Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 19 (1st Cir. 2008) ("[P]laintiff does not provide any legal argument or case citations on appeal as to why the district court was wrong[, and we] 'have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation.'" (quoting United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997))).

- 20 -

wrong.

Vizcarrondo states only that, "despite the fact that Rivera was suspended without pay for 5 days following his sexual harassment behavior against Vizcarrondo . . . subsequently to his suspension and after returning back to work, Rivera continued seeking contact with Vizcarrondo[.]" (emphasis added). This misses the point. "An employer's disciplinary decision must be evaluated in real time; it cannot be evaluated in hindsight." Wilson, 639 F.3d at 8. And Vizcarrondo has not argued on appeal that, based on the information the agency had when the suspension was imposed, the USDA's disciplinary action was unreasonable.

### 2. Rivera's Post-Suspension Conduct

Vizcarrondo has also waived the argument that her allegations against the USDA arising out of Rivera's post-suspension conduct should have survived summary judgment. On appeal, she does not argue against the district court's determination that such conduct was insufficiently severe to trigger Title VII liability.[9] See Vizcarrondo I, 2020 WL 1459070, at *20.

The district court held that Rivera's alleged attempt to

---

[9] For this reason, we need not determine whether Vizcarrondo's email to Hill initiated the EEO process for exhaustion of administrative remedies purposes. Indeed, Vizcarrondo has likely waived any objection to the district court's conclusion that she failed to exhaust as to this later conduct.

- 21 -

intimidate Vizcarrondo by being near her with a cavalier attitude did not create an "objectively hostile or abusive, severe or pervasive" environment. Id. at *17. The court further held that "[t]he jacket incident was isolated and mild in the context in which it took place" and likewise was too insubstantial to create a hostile work environment. Id. at *20. On appeal, Vizcarrondo fails to engage with these rulings. Her appellate brief instead repeats the argument she made in the district court. Cf. Conto v. Concord Hosp., Inc., 265 F.3d 79, 81 (1st Cir. 2001) (rejecting appellant's fact-based appellate argument where appellate brief fails to cite to any relevant material record facts, instead "generally invit[ing the court's] attention to all the documents submitted in evidence"). By not engaging with the specific grounds on which district court rejected her post-suspension discriminatory hostile work environment claim against the USDA, Vizcarrondo's appeal of this issue must fail.

### 3. Retaliation

Vizcarrondo's arguments as to her retaliation claim also fail on waiver grounds. Here, in rejecting Vizcarrondo's retaliatory hostile work environment claim, the district court observed that Vizcarrondo engaged in protected activity by complaining of sexual harassment to her immediate supervisor but held that she proffered no materially adverse employment action and failed to establish causation between her protected conduct

and the adverse actions she alleged.  Vizcarrondo I, 2020 WL 1459070, at *24-25.  It reiterated that Rivera's cavalier attitude and the jacket incident were too insubstantial to create a hostile work environment and observed that there was no causation as to any other of Rivera's post-suspension conduct of which the employer was unaware.  Id. at *25.

Vizcarrondo yet again fails to develop any argument that addresses the district court's ruling.[10]  As to the adverse employment action, Vizcarrondo merely states that "Rivera continued to seek to be in her presence creating a hostile and intimidating working environment" and "assaulted her by touching her buttocks."  She again does not engage with the district court's substantiality ruling.  And for causation, Vizcarrondo generally states that "a causal connection existed between the protected conduct and the adverse action" by the USDA.  This is not enough.  Vizcarrondo does not explain why the district court's conclusions were wrong, nor does she "spell out [the] issues clearly [by] highlighting the relevant facts and analyzing on-point authority."  Rodríguez, 659 F.3d at 175; see also Best Auto Repair Shop, Inc.

_____

[10]  These deficiencies are no doubt a product of her decision to submit a brief to our court that is almost entirely copy and pasted from her district court brief.  As a result, her argument is unmoored from the district court's holding.  For example, her appellate brief argues that the district court should not resolve questions of pretext and motive on summary judgment.  But the district court assumed Rivera had a retaliatory motive. Vizcarrondo I, 2020 WL 1459070, at *24.

v. <u>Univ. Ins. Grp.</u>, 875 F.3d 733, 736-37 (1st Cir. 2017).

B. <u>Vizcarrondo's Remaining Tort Claim Against Rivera Also Fails on Waiver Grounds</u>

The district court held that Vizcarrondo's remaining claim against Rivera -- assault and battery under Article 1802 -- is barred by sovereign immunity. <u>Vizcarrondo II</u>, 2020 WL 6276072, at *10. Once again, Vizcarrondo has failed to develop any arguments in response to that ruling.

The record shows the following. Both Vizcarrondo and Rivera reported to work at the Luis Muñoz Marín International Airport the morning of January 14, 2016. Vizcarrondo was sitting on a chair in the Main Inspection Room when Rivera entered, having just completed an overtime shift and needing to discard contraband in the designated trashcan. The Main Inspection Area was the only location where the contraband could be discarded. Rivera disposed of the contraband, greeted two co-workers, walked toward the chair on which Vizcarrondo was sitting, grabbed his government-issued jacket off of the back of that chair, continued walking to another table, picked up a thermos, verified the daily guide log to confirm where he was to report, and left for his next post.[11] The APHIS permits its employees to wear official government jackets as part of their uniform. Employee regulations specify that employees

---

[11] Vizcarrondo alleges that Rivera grabbed the jacket "abruptly" and "like a madman" without asking Vizcarrondo for permission. This frightened her.

- 24 -

must keep all equipment and uniforms with them as they report to their stations.

Vizcarrondo alleges that, when grabbing his jacket off of her chair, Rivera brushed her "back and buttocks." This, she alleges, constitutes assault under Puerto Rico tort law. On appeal, the issue is whether Rivera personally can be held liable for this alleged assault, which turns on whether he was acting within the scope of his federal employment at the time. The district court held that Rivera was acting within the scope of his employment. It concluded that, when Rivera grabbed his jacket, his conduct was related to his employment, took place at work during work hours, and "advanced the employer's interests, for the agency's mission is furthered when its employees report to work on time, review the daily log to make sure they know where they are assigned to work, discard contraband in the assigned containers, and are appropriately dressed and duly uniformed in the workplace." Id. at *3 (internal citations omitted).

As was the case here, "[u]nder the Westfall Act, the Attorney General [or his delegate] can certify that a federal employee named as a defendant in a civil case was 'acting within the scope of his office or employment at the time of the incident' that serves as the basis for a tort claim against that employee." Lyons v. Brown, 158 F.3d 605, 606, 607 n.1 (1st Cir. 1998) (quoting 28 U.S.C. § 2679(d)(1)). When such a certification is made, "the

court dismisses the federal employee from the case, and [provisionally] substitutes the United States as defendant." Davric Me. Corp. v. U.S. Postal Serv., 238 F.3d 58, 65 (1st Cir. 2001). If the plaintiff objects to the certification, she then has the burden to establish that the defendant was acting outside the scope of his employment and should be re-named as the proper defendant. See id. at 66. "State law controls the determination of whether a federal employee was acting within the scope of employment." Id.

The parties agree that Puerto Rico law applies here. Under Puerto Rico law, courts making a scope of employment determination consider: (1) whether the employee's action showed a desire to "serve, benefit, or further his employer's . . . interest[;]" (2) whether he was prompted purely by personal motives; and (3) whether his action was reasonably related to the scope of his employment. Borrego v. United States, 790 F.2d 5, 7 (1st Cir. 1986) (quoting Rodriguez v. United States, 328 F. Supp. 1389, 1391 (D.P.R. 1971)); Vernet v. Serrano-Torres, 566 F.3d 254, 261 (1st Cir. 2009).

Because we conclude for the reasons below that Vizcarrondo has failed to sufficiently develop, and has thereby waived, arguments demonstrating error in the district court's scope-of-employment ruling, we do not reach the merits of whether, as a matter of Puerto Rico law, Rivera was acting within the scope

of his employment when he grabbed his official government jacket off of the back of the chair on which Vizcarrondo was sitting.

Vizcarrondo's first argument as to the scope-of-employment question faces many of the same waiver issues that plague her Title VII claims. In front of the district court, she argued that Rivera's acts were outside the scope of his employment because they were not in his job description. In its opinion, the district court explained at length why the contents of Rivera's job description were not dispositive. Vizcarrondo II, 2020 WL 6276072, at *2-4. Instead of grappling with the district court's holding and explaining why it was in error in her brief to our court, Vizcarrondo instead repeats verbatim the same argument she made to the district court -- committing a tort was not within the scope of Rivera's employment because it was not in his job description.

The district court based its decision on the overall context of the encounter -- Rivera was between shifts, moving between work areas, reviewing his work log, and retrieving his work uniform. Id. at 3-4. Perhaps there is a successful argument to be made that the district court was wrong in this determination, but Vizcarrondo does not articulate one.

Vizcarrondo next contends that, even if as an objective matter Rivera's conduct had the requisite link to the scope of his duties and APHIS's interests, the conduct was outside the scope of

employment because, subjectively, Rivera engaged in the conduct for a wholly personal reason.  Yet on appeal Vizcarrondo fails to cite or analyze any authority applying Puerto Rico law that suggests that such a subjective inquiry is decisive in such a circumstance.  As a result, any argument that the district court erred in rejecting this contention is waived for lack of development.  See Rodríguez, 659 F.3d at 175; Galvin v. U.S. Bank, N.A., 852 F.3d 146, 165 (1st Cir. 2017) (deeming waived an argument for which the appellants did not cite relevant or supportive authority).[12]

**Affirmed**.

---

[12]    Vizcarrondo also advances the following arguments: First, the USDA, in its request for the issuance of a scope of employment certification, erred by not evaluating the appropriate factors; second, the trial court erred by not allowing her to present evidence during an evidentiary hearing that Rivera's actions during the jacket incident were motivated purely by personal reasons.  By presenting no developed explanation as to either issue, Vizcarrondo has waived these arguments.  See Zannino, 895 F.2d at 17.